IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


Monty R. Williamson,              :

          Plaintiff,              :

     v.                           :      Case No. 2:13-CV-683

                                  :
Scioto Township Trustees,                MAGISTRATE JUDGE KEMP
et al.,                           :
          Defendants.

OPINION AND ORDER

     This matter is before the Court to consider the motion for
summary judgment filed by Scioto Township, Michael E. Struckman,
and Terry Brill.  Plaintiff Monty R. Williamson has responded and
the motion has been fully briefed.  For the following reasons,
the motion for summary judgment will be granted.

I.  Background

     A version of this case was originally filed by Mr.
Williamson against Scioto Township, Mr. Struckman and Mr. Brill
in Pickaway County Common Pleas Court on August 25, 2010.  In
that action, Mr. Williamson asserted claims of trespass,
nuisance, and inverse condemnation and sought punitive damages.
The state court dismissed the case on August 30, 2011, for Mr.
Williamson's "failure to abide by [the] Court's Scheduling
Order."  See Motion for Summary Judgment (Doc. 29), Exhibit H.
On August 9, 2012, Mr. Williamson re-filed suit in Pickaway
County Common Pleas Court against the same defendants and
asserted the same claims.

     On June 18, 2013, Mr. Williamson filed an amended complaint
in state court.  In the amended complaint, Mr. Williamson

asserted several new claims including a claim for a negligent
permit process, an unconstitutional culvert policy, ratification,
abuse of office, and willful destruction of evidence.  On July
15, 2013, the defendants removed the case to this Court.  On
October 24, 2013, Mr. Williamson, without leave, filed another
proposed amended complaint.  The Court denied leave, and the
first amended complaint remains at issue here.

## II.  Legal Standard

Summary judgment is not a substitute for a trial when
facts material to the Court's ultimate resolution of the case
are in dispute.  It may be rendered only when appropriate
evidentiary materials, as described in Fed. R. Civ. P. 56(c),
demonstrate the absence of a material factual dispute and the
moving party is entitled to judgment as a matter of law.
Poller v. Columbia Broadcasting Systems, Inc., 368 U.S. 464
(1962).  The moving party bears the burden of demonstrating
that no material facts are in dispute, and the evidence
submitted must be viewed in the light most favorable to the
nonmoving party.  Adickes v. S.H. Kress & Co., 398 U.S. 144
(1970).  Additionally, the Court must draw all reasonable
inferences from that evidence in favor of the nonmoving
party.  United States v. Diebold, Inc., 369 U.S. 654 (1962).
The nonmoving party does have the burden, however, after
completion of sufficient discovery, to submit evidence in
support of any material element of a claim or defense on
which that party would bear the burden of proof at trial,
even if the moving party has not submitted evidence to negate
the existence of that material fact.  See Celotex Corp. v.
Catrett, 477 U.S. 317 (1986); Anderson v. Liberty Lobby,
Inc., 477 U.S. 242 (1986).  Of course, since "a party seeking
summary judgment ... bears the initial responsibility of
informing the district court of the basis for its motion, and

identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, the responding party is only required to respond to those issues clearly identified by the moving party as being subject to the motion.  It is with these standards in mind that the instant motion must be decided.

### III.  Facts

This case arises from the installation of a driveway culvert on Mr. Williamson's property in early December, 2008, by Scioto Township, the location and installation of which Mr. Williamson objects to, and Scioto Township's decision not to address the situation at Township expense, despite Mr. Williamson's objections.  These facts are not in dispute.  The following background relating to these undisputed facts is taken from Mr. Williamson's deposition and accompanying exhibits as well as the affidavits and exhibits submitted by defendants.

In 1999, Mr. Williamson acquired over 80 acres of farmland in Scioto Township, Pickaway County, Ohio, located at 11672 Coontz Road, Orient, Ohio.  Coontz Road is a Township road.  Mr. Williamson's land had belonged to family members and he aspired to build a house on the land although he lived in West Virginia for several years after acquiring it.  In 2008, Mr. Williamson spoke with three prospective builders, including Scott Reynolds of Reynolds Contracting.  Mr. Reynolds prepared a construction cost estimate of $110,800 but Mr. Williamson contends that he did not hire Mr. Reynolds to construct his house.  Despite this, Mr. Reynolds, on October 22, 2008, applied to Scioto Township for a driveway culvert permit.  Mr. Reynolds requested that the Township install the culvert.  The permit was issued on November 4, 2008.  The culvert was installed on or around December 9, 2008, by Keith Kauffeld, a Township Trustee and Mr. Struckman. At the time of the culvert installation Mr. Struckman was a part-

time Township employee but was not a trustee.  Shortly after its installation, Mr. Williamson became aware of alleged problems with the culvert.  These problems included the culvert's alleged improper installation, location and waterflow damaging an outbuilding on the property.

In October, 2009, Mr. Williamson contracted with Denny Grambo of Complete Custom Construction, for the construction of the house.  Construction of the home by Mr. Grambo appears to have begun in October, 2009 and was completed in March, 2010. Around this same time, Mr. Williamson contacted Mr. Struckman, by now a Township Trustee, to address problems with the culvert installation dating back to December, 2008.  Mr. Struckman met with Mr. Williamson at the property and Mr. Williamson contends that Mr. Struckman stated at the end of the meeting "[w]e didn't want you to build here."  Mr. Struckman disputes that he made such a comment.

In this same time period, Mr. Williamson also contacted Mr. Brill to discuss the issues relating to the culvert and Mr. Brill suggested that Mr. Williamson attend an upcoming meeting of the Township Trustees.  Mr. Williamson attended a meeting on April 5, 2010, voiced his concerns about the culvert and stated that he had not authorized Mr. Reynolds to act as his agent.  The culvert issue was not resolved at that meeting.  Mr. Williamson attended another meeting on May 19, 2010 and raised the same issues.  At this meeting, a decision was made by the Trustees to solicit an opinion from the county prosecutor about the culvert.

At a meeting held June 2, 2010, the prosecutor's update advising removal and reinstallation of the culvert at the Township's expense was read.  Mr. Struckman and Mr. Brill disagreed with the prosecutor's opinion, would not second a motion to follow the prosecutor's advice, and, as a result, the motion was not passed.  At the July 7, 2010 meeting Mr. Struckman

-4-

and Mr. Brill voted in favor of a resolution seeking a second opinion.  The second opinion, received on August 12, 2010, stated that the Township was not liable for relocating the culvert.

IV. <u>The Motion for Summary Judgment</u>

In their motion for summary judgment, the defendants raise several issues.  First, they contend that, to the extent Mr. Williamson intends to name as a defendant the Scioto Township Trustees, as a distinct entity, it has not been properly served with process.  According to defendants, the Trustees (or perhaps more accurately, the Board of Trustees), was not named as a defendant in the original complaint filed in state court and, therefore, was not served.  Rather, Mr. Williamson named Scioto Township as a defendant in his original complaint but did not name the [Board of] Trustees as a defendant until he filed his amended complaint.  For these reasons, the defendants contend, any claims against the Scioto Township Trustees, as a distinct entity, should be dismissed.

With respect to the claims which defendants construe as arising under federal law - unconstitutional culvert policy, ratification, and abuse of office, - they contend that these claims can arise only under 42 U.S.C. §1983 and, because they were not raised until the first amended complaint was filed in 2013, they are barred by the applicable two-year statute of limitations.  With respect to the ratification and abuse of office claims, defendants also argue that these claims fail on their merits - the former because Mr. Williamson is unable to establish the elements of the claim and the latter because they are entitled to legislative immunity.

With respect Mr. Williamson's state law claims other than the inverse condemnation claim, defendants assert that they are immune from suit or that these claims fail on their merits.  With respect to the inverse condemnation claim, defendants argue that

the Court should dismiss this claim for lack of jurisdiction because the claim is not ripe.

In response to defendants' request for dismissal of the [Board of] Trustees as a defendant, Mr. Williamson argues that "'Scioto Townhship'" has always been a party. He interprets the defendants' argument as suggesting that he was required to name all three trustees as defendants in order to have named Scioto Township as a defendant. Mr. Williamson explains his position as follows:

> It is the intent of Plaintiff simply to include the township for injunctive relief and/or inverse condemnation. Trustee Struckman and Trustee Brill were named individually for violating Plaintiff's rights.

In response to defendants' statute of limitations argument as it relates to the purported federal claims, Mr. Williamson makes several statements which the Court will construe most liberally as suggesting that these claims relate back to the date of filing of the original complaint in the Common Pleas Court of Pickaway County on August 25, 2010, and as a result, are not time-barred. Mr. Williamson also argues the merits of each of his claims, both the purported federal claims and the state law claims, in response to the motion for summary judgment. His arguments, as relevant here, are set forth in detail below.

In reply, defendants address the merits of Mr. Williamson's unconstitutional culvert policy as raised in the response. According to defendants, Mr. Williamson has failed to provide any admissible evidence in support of this claim. Beyond this issue, defendants reiterate many of the same arguments presented in their motion.

V. <u>Analysis</u>

A. <u>The Scioto Township Trustees</u>

Turning first to the issue of whether the Board of Trustees is a named defendant, based on Mr. Williamson's representations,

-6-

this issue does not require much discussion.  The Court concludes from his response, as well as from its reading of the body of the amended complaint which mentions only Scioto Township, that the Scioto Township Trustees, as a distinct entity, is not intended to be named as a defendant in this case.  Consequently, for purposes of clarity, the Court will grant the motion for summary judgment to the extent it seeks to dismiss the Scioto Township Trustees, as an entity, as a defendant.

     B.   The Unconstitutional Culvert Policy Claim

Turning to Mr. Williamson's claim that Scioto Township enforces an unconstitutional culvert installation policy, this claim is stated in the first amended complaint as follows:

> 20.  The township has a policy to place a culvert 14 feet off the roadway, notwithstanding such placement in outside of its roadway easement.

> 21.  The culvert was placed 14 feet off of the roadway even though it was, or should have been, obvious that such placement would be outside of the easement and would cause a redirection of water into the existing building.

> 22.  The enactment of the policy and the following of the policy were wilful, wanton and/or reckless acts causing trespass, nuisance and in violation of the Fifth Amendment taking property without just compensation.

Although Mr. Williamson does not make any such reference in his complaint, a claim alleging a constitutional violation by a person acting under of state law must be brought pursuant to 42 U.S.C. §1983.  LaBorde v. City of Gahanna, 946 F.Supp.2d 725, 731 (S.D. Ohio 2013); see also Stebelton v. Bloom Tp. Bd. of Zoning Appeals, 2010 WL 1629868, *2 (S.D. Ohio April 21, 2010). Despite the language of this claim, Mr. Williamson has represented to the Court that he is not pursuing a Fifth Amendment claim for a taking without just compensation.  See Preliminary Pretrial Order (Doc. 20) ("Plaintiff ... denied ever

-7-

having made a Fifth Amendment takings claim).  Mr. Williamson's
representation appears consistent with prevailing case law.

    "The Fifth Amendment, made applicable to the States and
their subdivisions through the Fourteenth Amendment, provides
'private property [shall not] be taken for public use, without
just compensation.'"  Searles v. Toledo Area Sanitary Dist., 2013
WL 3772481, *5 (N.D. Ohio July 16, 2013).  "To state a claim
under the Takings Clause that is ripe for federal court review,
Plaintiff must first demonstrate that state compensation
procedures, assuming they exist and are adequate, have been
exhausted." Id., citing River City Capital, L.P. v. Bd. of Cty.
Comm'rs, Clermont Cty., Ohio, 491 F.3d 301, 306-09 (6th Cir.
2007).  As explained by the Court in Stebelton:

> ... A Fifth Amendment claim alleging a taking without
> just compensation is not ripe for review until: "(1)
> there has been a final decision by the relevant state
> decisionmaker and (2) the property owner has utilized
> appropriate state inverse condemnation procedure."
> Montgomery v. Carter County, Tenn., 226 F.3d 758, 765
> (6th Cir. 2000)(citing Williamson County Reg'l Planning
> Comm'n, 473 U.S. 172, 194, 105 S.Ct. 3108, 87 L.Ed.2d
> 126 (1985).  A plaintiff must meet the second
> requirement "only if a 'reasonable, certain and
> adequate provision for obtaining compensation' exists
> in the state."  Montgomery, 226 F.3d at 765 (quoting
> Williamson County, 473 U.S. at 194).  The second
> requirement is necessary because "[t]he Fifth Amendment
> does not proscribe the taking of property; it
> proscribes taking without just compensation."
> Williamson County, 473 U.S. at 194.  As a result, "no
> constitutional violation occurs until just compensation
> has been denied," through, for example, a state's
> inverse condemnation procedures.  Id at 195 n. 13.
> Ohio law allows a plaintiff to seek a writ of mandamus
> "to compel public authorities to institute
> appropriation proceedings where an involuntary taking
> of private property is alleged."  State ex rel.
> Preschool Development, Ltd. v. City of Springboro, 99
> Ohio St.3d 347, 792 N.E.2d 721, 724 (Ohio 2003).

Id. at *3.

-8-

Mr. Williamson's representation that he is not pursuing a takings claim also is consistent with the other allegations of his amended complaint.  For example, he does not allege that he has been denied just compensation through an inverse condemnation, or similar procedure, in Ohio.  Rather, he asserts an inverse condemnation claim in his amended complaint through which he requests a writ of mandamus requiring the township to institute appropriation proceedings.  See Amended Complaint, ¶¶35-39.

Because it is clear from both Mr. Williamson's representation and the amended complaint as drafted that he is not pursuing a takings claim under §1983, the question becomes what type of claim he is intending to pursue based on his allegations of an unconstitutional culvert policy.  In his response, Mr. Williamson provides some limited insight into his intention.  The relevant discussion in his response is found at pages two and three and states follows:

### A Culvert is Required

Since Scioto Township is not a limited home rule government, it has no authority to require a person to obtain a permit from the township before installing a driveway culvert, Ohio Attorney General Opinion 2002-09, reaffirmed by Ohio Attorney General Opinion 2011-028 to Prosecutor Wolford in regard to the facts of this case.  Nevertheless, Scioto Township requires a culvert to be installed when there is new construction. (Plt. S.J. Exh. 3A).  It must be installed 14 feet off of the pavement, (Plt. S.J. Exh. 3B) which results in a 24 foot placement, despite the roadway easement being only 20 feet.  (Plt. S.J. Exh. 4).

### Lack of an Adequate Permit Policy

The Township has two policies.  The first is to require anyone building a house to obtain a culvert permit even though it is not needed.  The second is to install it 14 feet off the surface.  As stated, a "driveway" existed at the entrance of the outbuilding which was also used as a driveway to and from the

fields and new house that was constructed. There was
never a culvert under it. The township roadway right-
of-way between the outbuilding and the paved portion of
the highway, at the driveway entrance and past the
driveway, was flat. There was no township ditch or
swale. Plaintiff could drive his car around the
outbuilding. The road water runoff ran into existing
farm field tile and did not pond. It never ponded
until after the culvert was installed and a new ditch
along the block building was dug. The block building
never suffered from standing water in it and cracking
until the "improvements" were made by Mr. Struckman.

The Township does not have a policy to ensure the
landowner controls the issuance of the permit. Even
though he had no contract, Mr. Reynolds without telling
Plaintiff, went to the township clerk and obtained a
culvert permit. He elected to have the Township
install it. The Township has no policy to verify
agency before issuance of a permit. It does not
require a permit application to be signed by the owner.
The application was not signed by Plaintiff. No
inquiry was made to the applicant, Mr. Reynolds, to
verify his right to apply on behalf of the owner. No
verification was made to the owner, even by a simple
phone call. No notice was given to the owner the
permit was issued. Plaintiff was unaware of the permit
until he complained. No notice is given of the date of
installation.

The Township does not have a policy to insure
proper installation. There is no policy: (1) to
address the fact that 24 feet is outside its easement,
(2) to pay compensation before the take, (3) to survey
to insure placement within the easement, (4) to have
construction drawings to address grade and proper
runoff and (5) to grant relief for mistake.

From this discussion in his response, Mr. Williamson appears
to be making two arguments - 1) Scioto Township was acting
outside its authority in enacting a policy requiring the
installation of culverts in private driveways along township
roads for a new build home and 2) the township's policy allows
for the culvert installation to be completed without notice to
the property owner and then provides no recourse. As the Court

-10-

understands Mr. Williamson's explanation, his claim is based on two documents which he has submitted as exhibits to his response and which he contends establish a township policy.  The first of these documents provided by Mr. Williamson contains an effective date of January 3, 1996, and states as follows:

> Scioto Township - Pickaway County
>
> Access Driveways - New Residential Properties
>
> 1.    Culverts should be made of either concrete or galvanized pipe.
> 2.    Culverts must be at least 30 feet long.
> 3.    Culverts must be 12 inches or larger in diameter.
> 4.    If plastic culverts must be used, they must be a minimum of 30 feet long and must be covered with dirt 3 feet from each end.  The entire culvert must be covered to a depth of at least 12 inches.
> 5.    Township Trustees must be contacted for inspection of the placement and length of the culvert.

See Plaintiff's Memorandum Contra (Doc. 40), Plt. S.J. 3A.

The second document provided by Mr. Williamson is entitled "Guidelines for Driveway Culvert Installation" and notes an effective date of April 2, 2010.  It contains twelve guidelines including pipe and placement dimensions; a requirement that, prior to the installation of the culvert pipe, the trustees be contacted for placement and inspection; and a requirement that the landowner or permit applicant provide the culvert pipe.  See Plaintiff's Memorandum Contra (Doc. 40), Plt. S.J. 3B.

Initially, the Court notes that neither of the documents upon which Mr. Williamson relies is authenticated.  While submissions "'by a party opposing a motion for summary judgment need not themselves be in a form that is admissible at trial,' that party must 'lay[] out enough evidence that will be admissible at trial to demonstrate that a genuine issue on a

-11-

material fact exists.'"  Reed v. Procter & Gamble Mfg. Co., 556
Fed.Appx. 421, 427 (6th Cir. 2014), quoting Alexander v.
CareSource, 576 F.3d 551, 558 (6th Cir. 2009); see also
Fed.R.Civ.P. 56 (c)(1)(A) & (4).  Consequently, "hearsay evidence
not subject to any exception "'must be disregarded.'"  Id.,
quoting Alexander, 567 F.3d at 558.  For this reason,
"unauthenticated documents do not suffice."  Id.

    Here, Mr. Williamson failed to authenticate the documents
which he contends evidence Scioto Township's policy regarding the
installation of driveway culverts for new build homes.  He has
provided no affidavit or deposition testimony from any individual
with personal knowledge addressing the existence or requirements
of such a policy.  Accordingly, the Court may decline to consider
these documents in opposition to the motion for summary judgment.
Id.  Without these documents, Mr. Williamson has failed to
demonstrate to the Court the existence or requirements of Scioto
Township's culvert policy.  Absent such information, the Court
has no basis from which it could conclude that Mr. Williamson has
raised a genuine issue of material fact relating to the
constitutionality of the policy sufficient to withstand the
summary judgment motion.  For this reason alone, the defendants
are entitled to summary judgment on Mr. Williamson's claim of an
unconstitutional culvert policy.

    Further, even assuming the Court could consider these
documents as evidence of Scioto Township's culvert policy, Mr.
Williamson cannot succeed on this claim for the following
reasons.  Taking Mr. Williamson's second argument first, he seems
to be suggesting a procedural due process claim to the extent
that he contends that the culvert installation was performed
without notice to him and without an opportunity for him to
challenge its alleged improper installation resulting in the
deprivation of his property.

When an individual is deprived of a protected property or liberty interest, "procedural due process generally requires that the state provide a person with notice and an opportunity to be heard" before such deprivation occurs. Warren v. City of Athens, 411 F.3d 697, 708 (6th Cir. 2005). When a procedural due process claim arises in connection with a takings claim, the Court of Appeals has instructed that courts focus on the circumstances of the specific case – and particularly the issue of when the alleged injuries occurred – before deciding whether to apply the requirement that state court remedies first be pursued as set forth in Williamson County Regional Planning Commission v. Hamilton Bank of Johnson City, 473 U.S. 172 (1985). See Braun v. Ann Arbor Charter Tp., 519 F.3d 564, 572 (6th Cir. 2008).

In order to determine whether a procedural due process claim is distinct from a takings claim, the Court of Appeals has held that a procedural due process claim is "'instantly cognizable in federal court without requiring a final decision.'" Braun, 519 F.3d at 572, citing Nasierowski v. Sterling Heights, 949 F.2d 890 (6th Cir. 1991). As the Court in Braun explained, in Nasierowski, a landowner challenged the local government's action of rezoning his property without giving him notice of the change or a hearing. In that circumstance, the Court of Appeals found that the due process claim was "instantly cognizable" because the plaintiff was seeking the opportunity for a hearing and not a determination that a taking occurred. Id. In Braun, however, the Court concluded that the "thrust of the plaintiff's due process claim" was that the township's refusal to rezone property was a taking resulting from a particular policy bias and, therefore, the procedural due process claim was subject to Williamson County's exhaustion requirement. As the Braun Court explained, "if the plaintiffs were to succeed in their state-court takings claim, no procedural due process injury would

-13-

likely exist." Id. The Court looked to Bigelow v. Michigan Dep't of Natural Resources, 970 F.2d 154, 160 (6th Cir. 1992) to further confirm why the procedural due process claim at issue was subject to Williamson County's exhaustion requirement:

> Until the state courts have ruled on the plaintiffs' inverse condemnation claim, this court cannot determine whether a taking has occurred, and thus cannot address the procedural due process claim with a full understanding of the relevant facts. Furthermore, addressing the plaintiffs' procedural due process claim at this stage of the proceedings would allow future plaintiff effectively to circumvent the ripeness requirement for takings claims simply by attaching a procedural due process claim to their complaint.

Braun, 519 F.3d at 572. Applying the concepts of Bigelow to the case before it, the Braun court then stated:

> Likewise, unless there is a taking in the instant case, we are unable to say that the Township's decision resulted from bias potentially constituting a procedural due process violation. Further, a ruling that the plaintiffs' procedural due process claim is ripe would implicate our concern that a party could easily bypass the Williamson County rule by attaching an unclear and underdeveloped due process claim to a takings claim. We therefore believe that the district court's conclusion that the district court's conclusion that the procedural due process claim is ancillary to the takings claim is correct.

Id. at 572-73.

Here, Mr. Williamson's first amended complaint sets forth a claim for an unconstitutional culvert policy in terms of a Fifth Amendment takings claim. He has disavowed his intention to assert such a claim here, however, perhaps in recognition of Williamson County's exhaustion requirement. To the extent that he is pursuing a procedural due process claim, the only basis for such an interpretation of his claim is the limited discussion in his summary judgment response. The discussion does suggest a

-14-

notice issue but certainly does not go so far as to request a hearing.  In fact, the discussion in Mr. Williamson's response may well fit the Court of Appeals' idea of an "unclear and underdeveloped procedural due process claim" intended to bypass the Williamson County rule.  Regardless, it seems reasonable to conclude that, if Mr. Williamson were to succeed on his state-court takings claim, no procedural due process claim would likely exist under the circumstances of this case.  Consequently, the procedural due process claim appears to be ancillary to a takings claim.

However, even assuming that any due process claim is not ancillary to a takings claim and, therefore, is ripe for review, Mr. Williamson still cannot prevail.  As noted above, procedural due process requires that the state provide a person with notice and an opportunity to be heard before depriving that person of a property or liberty interest.  Wedgewood Ltd. Partnership I. v. Township of Liberty, Ohio, 456 F.Supp.2d 904, 934 (S.D. Ohio 2006); see also Thompson v. Ashe, 250 F.3d 399, 407 (6th Cir. 2001).  A plaintiff must demonstrate possession of a protected property interest before a court will consider whether the process provided, or lack thereof, violate plaintiff's due process rights.  Id., citing Hamilton v. Myers, 281 F.3d 520, 529 (6th Cir. 2002).  Property rights are created and defined by independent sources such as state law and not by the Constitution.  See Thomas v. Cohen, 304 F.3d 563, 576 (6th Cir. 2002).  As the Court of Appeals has explained, "[i]n order to have a property interest in a benefit, a person must have more than a desire for it or unilateral expectation of it; rather he must have a 'legitimate claim of entitlement to it.'"  Braun, 519 F.3d at 573, quoting R.S.W.W., Inc. v. City of Keego Harbor, 397 F.3d 427, 435 (6th Cir. 2005).  Further, there is no question that the right to property "does not exist free from government

-15-

intervention and regulation." Etzler v. City of Cincinnati, Ohio, 2009 WL 3210337, *2 (S.D. Ohio September 30, 2009). Here, Mr. Williamson has not established any cognizable property right triggering due process protections. At best, the interest Mr. Williamson claims, without any evidentiary support, seems to be an interest in the use of his land free from any requirement to install a driveway culvert for a new build home. However, he has not specifically identified this right or its source. Because Mr. Williamson has not done so, the Court is without any evidence from which it could conclude that such a right exists.

Even if Mr. Williamson had an identifiable property interest, he has not provided any evidence that he was denied procedural due process in connection with the installation of the culvert on his property. As explained above, in looking at "what process is due," the state is generally required to give notice and an opportunity to be heard prior to depriving a citizen of a protected interest. Thompson v. Ashe, 250 F.3d at 407. A procedural due process claim may be pursued under two theories. That is, Mr. Williamson must establish either: "(1) that [he] was deprived of a property interest as a result of an 'established state procedure' which itself violates due process rights; or (2) that the Township deprived [him] of a liberty or property interest 'pursuant to a random and unauthorized act' and available state remedies would not adequately compensate [him] for the loss that [he] suffered." Wedgewood L.P.I. v. Twp. of Liberty, 610 F.3d 340, 349-350 (6th Cir. 2010). Mr. Williamson has not met his burden under either prong.

First, Mr. Williamson has not provided proper evidence demonstrating the substance of Scioto Township's culvert policy. To the extent that Mr. Williamson is suggesting that Scioto Township has a policy of installing driveway culverts outside of the easement and without the property owner's knowledge, he has

-16-

provided no support for this contention.  To the contrary, the
guidelines he has provided, to the extent that the Court may
properly consider them, assume the knowledge and active
participation of the property owner in the culvert installation
process.  Additionally, the permit application process itself
assumes the property owner's knowledge given that it is an
affirmative, proactive process.  Moreover, according to the
driveway culvert permit application, applicants have the option
of assuming responsibility for the installation of the culvert
pipe themselves or requesting that the township install the
culvert pipe.  According to Mr. Williamson's application, the
request was made that the Township perform the installation.
This is a far different scenario from that required to
demonstrate a due process violation.  Even construing all the
evidence in Mr. Williamson's favor, there is no evidence from
which a trier of fact could conclude that Scioto Township has a
policy of unilaterally installing driveway culverts on private
property without the owner's knowledge.  Consequently, Mr.
Williamson has failed to demonstrate the existence of a state
procedure which itself violates due process rights.

On the other hand, based on Mr. Williamson's allegations
taken as a whole, it may be that he is contending that Scioto
Township deprived him of his property interest pursuant to a
random and unauthorized act - the improper installation of the
culvert on his property by a Township employee at the request of
an unauthorized representative purporting to act on Mr.
Williamson's behalf in a way that impacted waterflow resulting in
damage to an outbuilding.  To the extent that Mr. Williamson may
be making such an argument, he has not demonstrated the
inadequacy of state postdeprivation remedies.  See Daily
Services, LLC v. Valentino, — F.3d —, 2014 WL 2883875, **12-13
(6th Cir. June 26, 2014)(explaining Sixth Circuit precedent

-17-

under the doctrine of Parratt v. Taylor, 451 U.S. 527, 538
(1981), and acknowledging that in this Circuit, Parratt's
postdeprivaton remedy analysis applies in cases where the
deprivation complained of is unpredictable and random).  As
previously noted, Ohio has "'reasonable, certain and adequate
procedures'" for plaintiffs to pursue compensation for an
involuntary taking.  River City Capital, 491 F.3d at 307, quoting
Coles v. Granville, 448 F.3d 853, 865 (6th Cir. 2006).
Specifically, Ohio courts have "recognized mandamus as the
vehicle with which to contest an involuntary taking." Id.  As
discussed at length above, Mr. Williamson has neither pursued
this state remedy nor provided any evidence of its inadequacy.
Consequently, defendants are entitled to summary judgment to the
extent that Mr. Williamson's claim could be construed as one for
a denial of procedural due process.

      To the extent that Mr. Williamson may be asserting a
substantive due process claim, such a claim also fails.  As the
court in Shelton v. Twin Tp. Ohio, 2013 WL 1627345, *5 (S.D. Ohio
April 16, 2013) explained:

          ... Claims for violation of substantive due
      process [] generally fall into two categories:

      The first type includes claims asserting denial of a
      right, privilege, or immunity secured by the
      Constitution or by federal statute other than
      procedural claims under 'the Fourteenth Amendment
      simpliciter.'

      The other type of claim is directed at official acts
      which may not occur regardless of the procedural
      safeguards accompanying them.  The test for substantive
      due process claims of this type is whether the conduct
      complained of 'shocks the conscience' of the court.

      LRL Properteis v. Portage Metro Hous. Auth., 55 F.3d
      1097, 1111 (6th Cir. 1995)(citing Mertik v. Blalock,
      983 F.2d 1353 (6th Cir. 1993)).  Therefore the right
      asserted must be fundamental or the conduct must "shock

-18-

the conscience." EIS Props., LLC v. City of Toledo, 698 F.3d 845, 861 (6th Cir. 2012)(citing Valot v. S.E. Local School Dist. Bd. Of Educ., 107 F.3d 1220, 1228 (6th Cir. 1997)( discussing substantive due-process claims as falling "into two categories" (1) deprivations of a particular constitutional guarantee; and (2) actions that 'shock the conscience.'")).

With respect to the first prong, as already discussed, Mr. Williamson has not demonstrated an interest from being free of a requirement that driveway culverts be installed in connection with the building of a new home. Further, assuming there is any identifiable property interest here, the Court cannot conclude that Scioto Township's installation of a culvert on Mr. Williamson's private property pursuant to established guidelines and at the request of an individual purporting to be Mr. Williamson's representative shocks the conscience. Consequently, defendants are entitled to summary judgment to the extent that Mr. Williamson's claim could be construed as one for a violation of his substantive due process rights.

Turning to Mr. Williamson's remaining arguments, he contends that Scioto Township acted outside its authority in instituting a policy requiring driveway culverts for new build homes. First, as discussed above, Mr. Williamson has not provided any proper evidence of the Township's policy. Similarly, he provides no support for his conclusory statement that issuing such a policy would be beyond the Township's authority. Further, Mr. Williamson has provided no evidence to suggest that the Township intended to install the driveway culvert on his property without his knowledge. Finally, to the extent that Mr. Williamson suggests that Scioto Township is at fault because it does not have a policy in place to prevent the situation which he alleges occurred here - that someone posing as his representative initiated the culvert installation process - any such claim does not rise to a constitutional violation.

C.  <u>The Ratification Claim</u>

In his amended complaint, Mr. Williamson designates his sixth claim as one for ratification and pleads as follows:

> 41.  The Township knowingly permitted Michael Struckman to hold himself out as a trustee when he was not, to interject himself into official business and to direct township affairs, including the placement of the culvert.
>
> 42.  With full knowledge of Defendant Struckman's wrongful actions, the Township refused to countermand them.
>
> 43.  As a result, all actions of Struckman as road worker were ratified.

In their motion for summary judgment, defendants assert that Mr. Williamson has provided no evidence of Mr. Struckman's alleged wrongful acts.  With respect to the allegation that Mr. Williamson improperly represented himself as a trustee, defendants point to Mr. Williamson's testimony that he was aware that Mr. Struckman was not a trustee at the time of the culvert installation.  <u>See</u> Williamson Depo. Vol. II, p. 126.  At all other times relevant to the amended complaint, Mr. Struckman was a trustee acting in his official capacity.  <u>See</u> Struckman Affidavit, at ¶¶4-5.  Further, they contend that there is no evidence that Mr. Struckman directed the placement of the culvert on Mr. Williamson's property.  They also assert that Mr. Williamson has not indicated which method of ratification under 42 U.S.C. §1983 he is alleging applies here but that, regardless, he has failed to establish the elements of either one.

In response, Mr. Williamson cites to the deposition testimony of Scott Edwards, a neighbor, who testified that he witnessed Mr. Struckman operating the backhoe during the culvert installation.  <u>See</u> Edwards Depo., p. 6.  Beyond this, the response offers nothing directed to the merits of this claim other than a recitation of what Mr. Williamson characterizes as

Mr. Struckman's alleged "personal bad faith."  Nowhere in Mr. Williamson's response is there an acknowledgment or discussion of the elements of a ratification claim under 42 U.S.C. §1983.

A municipality is not liable for the conduct of its non-policy making employees who act contrary to the policies of the municipality.  Turner v. City of Taylor, 412 F.3d 629, 639 (6th Cir. 2005).  A municipality may be liable for the unconstitutional decision of its policymaking employees, however, if it ratifies those decisions.  City of St. Louis v. Prapotnik, 485 U.S. 112, 127 (1988).  Ratification can occur by one of two methods.  The first method occurs when an individual with policymaking authority issues a final decision affirming a subordinate's decision on the merits or otherwise and, as a result, adopts it as municipal policy.  Id.  Under this scenario, even if the municipality ratified the decision, a plaintiff still must prove that the ratification was a "moving force" in causing a constitutional violation.  Baker v. Union Tp., Ohio, 2013 WL 4502736, *22 (S.D. Ohio August 22, 2013), citing Feliciano v. City of Cleveland, 988 F.2d 649, 656 (6th Cir. 1993).  However, "[a] 'single, isolated decision' by a policymaker is insufficient to demonstrate that a decision was the moving force behind a constitutional violation."  Id., quoting Williams v. Ellington, 936 F.2d 881, 884-85 (6th Cir. 1991).  Rather, the plaintiff must show that there was a history or pattern of unconstitutional decision-making by the policymakers.  Id.

The second method of ratification occurs when a policymaker fails meaningfully to investigate the acts of the officer.  Baker, 2013 WL 4502736 at *23; see also Wright v. City of Canton, 138 F.Supp.2d 955, 966 (N.D. Ohio 2001); Leach v. Shelby Cnty. Sheriff, 891 F.2d 1241, 1246-48 (6th Cir. 1989).  Failing meaningfully to investigate may include the lack of any investigation or an investigation that is not designed to uncover

-21-

what actually happened.  Id.

Here, Mr. Williamson has provided no evidence addressed to either of these methods of ratification.  He has not demonstrated a history or pattern of unconstitutional decision-making by Scioto Township.  Similarly, he has provided no evidence to refute the evidence provided by defendants that an investigation into the events surrounding the culvert installation was conducted following Mr. Williamson's bringing the issue to the defendants' attention.  See Motion for Summary Judgment (Doc. 29), Fleming Affidavit, Exhibits H, I and J.  All Mr. Williamson has done is, at best, offer wholly conclusory allegations and outright speculation.  This is insufficient to defeat a well-supported motion for summary judgment.  Lujan v. National Wildlife Fed'n, 497 U.S. 871 (1990).  Consequently, defendants are entitled to summary judgment on Mr. Williamson's ratification claim.

### D.  Abuse of Office Claim

Mr. Williamson's seventh claim is characterized as an "abuse of office" claim.  Although, again, Mr. Williamson does not reference 42 U.S.C. §1983 in his amended complaint, he represented to the Court that he is setting forth this claim under 42 U.S.C. §1983.  See Preliminary Pretrial Order (Doc. 20) (Plaintiff ... agrees that the amended complaint asserted a §1983 claim for abuse of office).  To the extent that such a claim exists under 42 U.S.C. §1983, Mr. Williamson's amended complaint includes the following allegations:

> 45. Trustee Michael Struckman possesses personal animosity and has engaged in a vendetta against Plaintiff.

> 46. Trustee Struckman has an ego that will not permit him to admit wrongdoing.

> 47.  Trustee Struckman abused his public office for his personal benefit with no benefit to the

Township.

48. Trustee Struckman has shown personal bias by telling Plaintiff that he did not want him there and he did not want him to build his house there, and he personally, opposed Plaintiff's reasonable efforts to resolve the problem. He is angry because Plaintiff rents farmland to Keavin Hill against whom Struckman holds a grudge.

49. Plaintiff and his counsel requested the trustees to cease and desist the trespass and to abate the nuisance, all to no avail.

50. Trustees Struckman and Brill ignored the clear legal opinion of the county prosecutor and the opinion of the Ohio Attorney General No. 2011-028 and enforced and continue to enforce an unlawful and/or unconstitutional township act and regulation.

51. Trustee Brill has abrogated his elected duty to make an independent impartial government decision to Struckman.

52. As a result, Struckman and Brill have abused their power of office and cannot claim legislative immunity.

53. The actions of Trustees Struckman and Brill were willful, wanton and/or reckless, were malicious entitling Plaintiff to punitive damages and attorneys' fees.

In their motion for summary judgment, defendants contend that they are entitled to legislative immunity on this claim. According to defendants, they took any of the actions alleged by Mr. Williamson solely in their legislative capacity as Trustees and acted well within their legislative discretion.

In response, Mr. Williamson makes the following argument, restated here exactly as it appears in his brief:

Legislative immunity is claimed for the Township's negative vote (not to remove the culvert). Legislative immunity, derived from Ohio Constitution Art II Sec 12,

-23-

is not absolute immunity for all actions.  <u>Incorporated Village of Hicksville v. Blakeslee</u>, 103 Ohio St. 508 (1921), in the syllabus holds:

The members of a municipal counsel, *when acting in good faith*, are exempt from individual liability for the exercise of their legislative discretion in voting, as such members of counsel, for or against any proposed legislation before them for consideration.  (emphasis added).

<u>U.S. Brewster</u>, 408 U.S. 501 (1972) holds legislative privilege does not extend to all conduct related to the legislative process (In no case has this Court ever treated the Clause as protecting all conduct relating to the legislative process).  Accord, <u>City of Dublin v. State of Ohio</u>, 138 OhioApp3d 753.

Further, culvert installation is not a legislative decision but an administrative decision based upon the already passed ordinance and its removal is based upon property law.  <u>Jaggers v. City of Alexandria</u>, 6th Cir. No. 08-5214, 2009 SL 233244 (2/2/2009)(Applying known rules is more likely to be administrative)".

Administrative discretionary functions are entitled to qualified immunity and then only if performed within their scope of their duties and taken with a reasonable belief that they were lawful, <u>Haskell v. Washington Township</u>, 864 F.2d 1266 (6th Cir. 1988). That case also holds no absolute immunity for official action in furtherance of personal as opposed to public interests.  Punitive damages can be recovered against individual trustees who act in bad faith and who intended to further personal interests, which, in that case, were individual views as to abortion.

A vote on a plan that culverts were necessary for a road project would be legislative.  However, installation and/or removal of a particular culvert is enforcement of policy and directing the enforcement of policy is an administrative act for which absolute legislative immunity is not available, <u>Chalker v. Howland Twp. Bd. Trustees</u> (1995) 74 Ohio Misc.2d 5. Chalker addressed abating a nuisance by burning down the house without notice and found that such action of directing enforcement of laws and policies only against

-24-

one person was an administrative act for which
legislative immunity was not available.

In reply, defendants argue that Mr. Williamson has now
reframed the issue. As defendants see it, the issue is whether
they possess the discretion to fail to second a motion to settle
Mr. Williamson's claim and to vote to request a second legal
opinion. The issue is not, from their perspective, about
enforcing a policy as Mr. Williamson now contends. They argue
that they are entitled to absolute legislative immunity for
discretionary functions, regardless of their motive.
Alternatively, they assert that they are entitled to qualified
immunity if they were acting administratively within the scope of
their duties with a reasonable belief that they were acting
lawfully.

The Court notes, initially, that the bulk of the allegations
relating to this claim are nothing more than speculation. The
only allegation about which there is any evidence of record is
contained in paragraph 50 of the amended complaint relating to
Mr. Brill's and Mr. Struckman's decision to seek a second opinion
rather than follow the advice of the county prosecutor. This
event is reflected in the minutes from the Trustee meeting dated
June 2, 2010. See Motion for Summary Judgment (Doc. 29), Fleming
Affidavit, Exhibit H. The minutes state as follows:

> Williamson/Countz Road - Sark read an update from the
> Prosecutor regarding the placement of the driveway pipe
> outside of the easement. Prosecutor opinion was since
> the township incorrectly installed the culvert, it
> should be removed/replaced by and at the township
> expense. Brill stated that he spoke with Reynolds and
> he confirmed that he was to have the driveway put in.
> Struckman stated the township should leave the culvert
> as it is. Brill stated if property owner wants the
> culvert moved, it should be at his expense. Struckman
> stated a violation letter should be sent for the second
> driveway - without permit. Sark made a motion that the
> township remove the 15" pipe and place a 12", per the
> driveway culvert rules within the easement. Motion

-25-

denied for lack of a second.

Further, the minutes of the meeting held July 7, 2010, reflect the following <u>See</u> Fleming Affidavit, Exhibit I:

> Williamson culvert - A letter was received from Attorney Kinglsey (sic), attorney retained by Mr. Williamson.  Struckman stated that he contacted the office of Loveland and Brosius for an opinion.  Sark responded that any outside attorney contact requires the authorization of the Board.  RESOLUTION 10-84. Struckman made a motion with a second by Brill to have matter handled by the offices of Loveland and Brosius. Vote: Brill -yes, Struckman - yes, Sark - n.  Motion carried.

<u>See also</u> Fleming Affidavit, Exhibit J Resolution 10-84.

Defendants are correct that local legislative officials have absolute immunity from §1983 claims arising out of their legislative activities.  <u>Bogan v. Scott-Harris</u>, 523 U.S. 44, 49 (1998).  Legislative immunity applies to "all actions taken in the sphere of legitimate legislative activity."  <u>Id</u>. at 54. Further, "[w]hether an act is legislative turns on the nature of the act."  <u>Id</u>.  The act of voting is a "quintessentially legislative" activity.  <u>Id</u>. at 55.  Additionally, whether an act is legislative is not dependent on the motive or intent of the official performing it.  <u>Id</u>., <u>citing</u> <u>Tenney v. Brandhove</u>, 341 U.S. 367 (1951). However, "not every act requiring a vote is necessarily entitled to absolute immunity."  <u>Shields v. Charter Tp. of Comstock</u>, 617 F.Supp.2d 606, 618 (W.D. Mich. 2009), <u>citing</u> <u>Abraham v. Pekarski</u>, 728 F.2d 167, 174 (3d Cir. 1984).

In determining whether an act falls within the scope of legitimate legislative activity courts focus on whether the acts "'were integral steps in the legislative process'" and whether the actions were "'legislative in substance.'"  <u>Guindon v. Township of Dundee</u>, 2010 WL 5394992, *6 (E.D. Mich. December 23, 2010), <u>quoting</u> <u>Bogan</u>, 523 U.S. at 55-56.  That is, courts

-26-

consider whether the actions "'bore all the hallmarks of traditional legislation,' including whether they 'reflected discretionary, policymaking decisions implicating the budgetary priorities' of the government and the services the government provides its constituents." Id., quoting Brogan, 523 U.S. at 55-56. Applying this standard, various activities have been found to be legislative in form including holding investigative hearings, voting for an ordinance or introducing a budget and signing into law an ordinance, a legislative committee's "deliberative and communicative processes," and a city council's exercise of its "investigatory power by presiding over a public comment period." Id. (citing cases). The Court of Appeals has declined to extend absolute immunity beyond these circumstances to administrative acts or to acts involving evidence of bad faith. Id. at *7. Further, actions which single out specific individuals and treat them differently from others are generally viewed as administrative in nature. See Cutting v. Muzzey, 724 F.2d 259, 261 (1st Cir. 1984)(discussing that if facts used in decision making are more specific or relate to particular individuals or situations, the decision is administrative).

In this case, it does not appear that the Trustees were engaged in any of the activities described above typically found to be purely legislative in nature. While they voted to authorize seeking an outside legal opinion relating to Mr. Williamson's issue, this is not the same as voting to enact an ordinance - a clearly legislative function. The other activity at issue involved a decision not to second a motion thereby preventing a vote from coming to the floor. These activities seem to be similar to those found by other courts to be administrative in nature. For example, in Guindon, the court found that a delay in processing the plaintiff's request for a transfer of their property was an administrative act. Further,

-27-

in Bryan v. City of Madison, 213 F.3d 267, 273 (5th Cir. 2000), cited as support in Guindon, the court held that a mayor's decision to delay board approval of proposed development plans was administrative in nature because "[t]he point at issue in those meetings was specifically and particularly related to the proposed development."

For these reasons, and in light of the Court of Appeals' limited expansion of the doctrine, the Court cannot conclude that defendants are entitled to absolute legislative immunity for their activities in failing to second a motion or in voting to request a second legal opinion.  These activities appear to be more reasonably construed as administrative in nature.  While absolute legislative immunity may not apply here, for the reasons stated below, defendants are entitled to qualified immunity for these acts and any other administrative acts relating to the application of the culvert policy to him alleged by Mr. Williamson.

 As the Court of Appeals recently explained in Guindon v. Township of Dundee, Mich., 488 Fed.Appx. 27, 35 (6th Cir. 2012):

> Public officials who perform discretionary duties within the scope of their employment are "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800 (1982).  Qualified immunity is not a defense to liability; it is an absolute immunity from suit. Saucier v. Katz, 533 U.S. 194 (2001), overruled on other grounds by Pearson v. Callahan, 555 U.S. 223 (2009).  Once a defendant asserts the doctrine of qualified immunity, the plaintiff bears the burden of satisfying a strict two-part test.  Barker v. Goodrich, 649 F.3d 428, 433 (6th Cir. 2011).  The plaintiff must show: (1) a violation of a constitutional right, and (2) the right at issue was clearly established at the time of the defendant's alleged misconduct.  Id.  We may address these tests in any order.  Pearson v. Callahan, 555 U.S. 223 (2009).

-28-

To find that a right is "clearly established," "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Leonard v. Robinson, 477 F.3d 347, 355 (6th Cir. 2007)(internal quotation marks omitted). In the "light of pre-existing law[,] the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 640 (1987).

Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). The Supreme Court has admonished lower courts "not to define clearly established law at a high level of generality." Ashcroft v. al-Kidd, — U.S. —, 131 S.Ct. 2074, 2084 (2011).

Based on the record presented here, Mr. Williamson has failed to establish the violation of any constitutional right arising from either the Township's alleged culvert policy or the defendants' decision to reject the prosecutor's opinion and seek an outside legal opinion. Additionally, despite his numerous allegations and lengthy argument, Mr. Williamson has failed to come forward with any evidence of the defendants' bad faith. Consequently, defendants' motion for summary judgment will be granted on grounds of qualified immunity with respect to Mr. Williamson's abuse of office claim.

### E.  State Law Claims

Because the Court has disposed of all of Mr. Williamson's federal claims in this order, the Court declines to exercise supplemental jurisdiction over his state law claims pursuant to 28 U.S.C. 1367(c)(3). Consequently, Mr. Williamson's state claims will be dismissed without prejudice. United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966) ("If the federal claims are dismissed before trial ... the state law claims should be dismissed as well."); Brandenburg v. Housing Auth. of Irvine, 253 F.3d 891, 900 (6th Cir. 2001).

V.  <u>Conclusion</u>

For the reasons set forth above, the motion for summary judgment (Doc. 29) is granted.  Plaintiffs state law claims are dismissed without prejudice.

<u>/s/ Terence P. Kemp</u>
United States Magistrate Judge